```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DECON LABORATORIES, INC.       :      CIVIL ACTION
                               :
          v.                   :
                               :
DECON LABORATORIES LIMITED     :      NO. 09-1241
```

MEMORANDUM

Bartle, C.J.                                            August 18, 2009

      Now before the court is the motion of defendant Decon Laboratories Limited ("Decon UK") to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

      Plaintiff Decon Laboratories, Inc. ("Decon USA"), a Pennsylvania corporation, initiated this antitrust action against defendant Decon UK, an English company. Decon USA is a Pennsylvania corporation that manufactures, sells, and distributes over 70 products, including cleaning agents and various disinfectants, for use in industries such as biotechnology and healthcare. Decon UK is an English company that manufactures, sells, and distributes approximately seven cleaning agents for use in scientific and medical laboratories. According to the affidavit of Decon UK's president, Robert Taylor, both Decon UK and Decon USA were owned and controlled by Robert Taylor and his two brothers from 1982 to 1987. In 1987, Decon UK came under the ownership and control of Robert Taylor while Decon USA came to be owned by his brother, Peter Taylor.

On April 1, 1987, Decon UK and Decon USA entered into a written non-compete agreement ("Agreement") that designated geographical regions in which each company was prohibited from doing business.  Decon UK agreed that it would not do business in North and South America, and in turn Decon USA would refrain from doing business outside of these two continents.  Wishing to expand its business beyond these territorial boundaries, Decon USA now seeks to terminate the Agreement.  Decon USA alleges that the Agreement is illegal, unenforceable, and void under 15 U.S.C. § 1.[1]  Decon USA seeks relief in the form of declaratory judgment against Decon UK as well as damages.

Section 12 of the Clayton Act provides, in relevant part, "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought ... in any district wherein it may be found or transacts business; and all process in such cases may be served ... wherever [the defendant] may be found." 15 U.S.C. § 22.  Our Court of Appeals has held that "personal jurisdiction under Section 12 of the Clayton Act is as broad as the limits of due process under the Fifth Amendment."  In re Auto. Refinishing Paint Antitrust Litig., 358 F.3d 288, 299 (3d Cir. 2004).

---

1.  Title 15 U.S.C. § 1 provides, in relevant part, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal."

Under the Due Process Clause, a defendant is subject to a forum's jurisdiction if it has "minimum contacts" with that forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The Supreme Court has explained, "Whether due process is satisfied must depend ... on the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." International Shoe, 326 U.S. at 319. Particularly where "contractual obligations" are concerned, as in the instant case, this fairness inquiry demands that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State." Burger King v. Rudzewicz, 471 U.S. 462, 473 (1985) (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950)).

Thus, in ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a court must determine whether or not the defendant has continuing relationships and obligations in the proposed forum. With regard to making such determinations, "[t]he Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests." Burger King, 471 U.S. at 478 (citing International Shoe, 326 U.S. at 319 (1945)). The "central concern of the inquiry into personal

jurisdiction," the Supreme Court has written, is "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

Our Court of Appeals "has held broadly that 'a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process.'" In re Auto. Refinishing, 358 F.3d at 298 (citing Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 369 (3d Cir. 2002)).  Because § 12 of the Clayton Act provides for nationwide service of process, we will assess this court's personal jurisdiction over Decon UK by examining its national contacts.

When considering a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992). However, the plaintiff's allegations must be grounded in "specific facts." Marten v. Godwin, 499 F.3d 290, 298 (3d Cir. 2007).

Personal jurisdiction may be exercised where a defendant has "continuous and systematic" contacts with the proposed forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 (1984). This is referred to as general jurisdiction. Id. at n.9. Alternatively, a court is said to have specific jurisdiction over a defendant where the plaintiff's

claim "arise[s] out of or relate[s] to" the defendant's activity in the forum.  Burger King, 471 U.S. at 472.  In this case, the forum is the United States.  Our Court of Appeals has specifically declined to address "the question of what level of relationship is necessary under the 'arise out of or relate to' requirement."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 99-100 (3d Cir. 2004).  Rather, it has acknowledged "the difficulty of formulating bright-line rules in the personal jurisdiction analysis."  Id. at 100.  In so doing, the court has "indicat[ed] the fact-sensitive nature of that analysis."  Id.

Decon USA first submits that Decon UK maintains continuous and systematic contacts with the United States because it has held a trademark registered with the U.S. Patent & Trademark Office since 1990.  Although Robert Taylor states in his affidavit that the trademark was only used in connection with a product that has not been marketed in the United States since 1993 and that only four units of the product were ever sold in the United States, Decon USA points to documents filed by Decon UK with the U.S. Patent & Trademark Office which state that the trademark has been in use since the establishment of the trademark in 1990.  The existence of the Decon UK trademark registered in the United States is certainly indicative of its continual presence in this country.

Decon UK has an additional contact with the United States which is more specifically connected with the claim at issue.  This contact is its 1987 Agreement with Decon USA.  The

Agreement limits the business activity of Decon USA to North and South America, of which the United States is, of course, a part.

When addressing a claim for relief grounded in a contractual dispute, courts must adopt "a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction."  Burger King, 471 U.S. at 479 (internal citations omitted).  In this case, the "prior business negotiations" included the division of territories between Decon UK and Decon USA.  The contract's "future consequences" include the benefit and detriment to each party as a result of the non-compete Agreement.

In Burger King, the Supreme Court found that the defendant purposefully availed itself of a forum when it "deliberately [reached] out beyond" the state in which it was located in order to obtain the "manifold benefits that would derive from affiliation" with the plaintiff.  Burger King, 471 U.S. at 479-80.  In evaluating whether or not a defendant has beneficially reached out in a such a way, our Court of Appeals has generally scrutinized the terms of the contract, in order to ascertain the defendant's level of involvement with the proposed forum state.  Miller Yacht, 384 F.3d at 100.

This case is unusual because the purpose of the 1987 Agreement is to bar Decon UK's involvement with the United States, and to prohibit Decon USA, a United States company, from

doing business outside of North and South America.  As a result, Decon UK agreed not to enter the United States to conduct business.  Nonetheless, as a realistic matter, Decon UK has reached into the United States to prevent Decon USA from competing with defendant in certain other markets.  Although Decon UK's "affiliation" with the United States may be out of the ordinary in that Decon UK is not conducting business here, Decon UK clearly derives a direct benefit from the restrictions on Decon USA in the 1987 Agreement and, through that Agreement, directly affects Decon USA in the United States.

  Decon USA also references two pieces of correspondence sent into the United States by Robert Taylor, both of which pertain to the Agreement.  On April 19, 2006, Taylor contacted the Pittsburgh, Pennsylvania offices of Fisher Scientific Products because he had heard that Decon USA was advertising its products in Fisher Scientific's United States catalogue.  Taylor sought assurance that the United States catalogue would not be circulated outside of the geographical boundaries allocated to Decon USA in the Agreement.  He was assured by Fisher Scientific that it would not be so circulated.

  Additionally, on February 24, 2009 the president of Decon USA contacted Taylor to propose the acquisition of Decon UK by Decon USA.  Taylor responded on March 2, 2009 by declining the offer.  Taylor also asserted that Decon UK would continue to abide by the terms of the 1987 Agreement not to compete.

Communication sent into a proposed forum, while not determinative, "may be factored into the minimum contacts analysis." Miller Yacht, 384 F.3d at 100. In both instances of communication sent by Robert Taylor into the United States, Decon UK expressly reiterated the terms of the Agreement with Decon USA. Decon UK's insistence on those terms further suggests that it receives a benefit from the non-competition Agreement with Decon USA, a United States company, and that Decon UK wishes to safeguard that benefit. The correspondence demonstrates that Decon UK maintains "continuing relationships and obligations" with Decon USA in this forum. Travelers, 339 U.S. at 647.

Whether one uses the label "general jurisdiction" or "specific jurisdiction," the 1987 Agreement, the above-referenced correspondence, and the trademark of Decon UK registered in the United States are together sufficient to satisfy the minimum contacts prong of due process.

Our Court of Appeals has held that "if these 'purposeful availment' and 'relationship' requirements are met, a court may exercise personal jurisdiction over a defendant so long as the exercise of that jurisdiction 'comport[s] with fair play and substantial justice.'" Miller Yacht, 384 F.3d at 97 (citing Burger King, 471 U.S. at 476 (internal quotations omitted)). The Court of Appeals has reiterated the factors to be considered in this final stage of jurisdictional analysis:

> The Supreme Court has indicated that lower courts addressing the fairness question may consider "the burden on the defendant, the

>    forum State's interest in adjudicating the
>    dispute, the plaintiff's interest in
>    obtaining the most efficient resolution of
>    controversies, and the shared interest of the
>    several States in furthering fundamental
>    substantive social policies."

Miller Yacht, 384 F.3d at 97 (citing Burger King, 471 U.S. at 477 (internal quotations omitted)).  There is nothing in the record to demonstrate an undue burden on Decon UK in being sued in the United States.  Moreover, both Decon USA and the United States have a strong interest in adjudicating matters in a federal forum that arise under the United States antitrust laws.  Finally, this action can and will be efficiently resolved in this court.  In sum, the exercise of jurisdiction here "comport[s] with 'fair play and substantial justice.'"  Burger King, 471 U.S. at 472 (quoting International Shoe, 326 U.S. at 320).

       Accordingly, we will deny the motion of defendant Decon UK to dismiss this action for lack of personal jurisdiction.